MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW
ONE WILSHIRE BOULEVARD, SUITE 2000
LOS ANGELES, CALIFORNIA 90017-3383
TELEPHONE 213-629-7600
FACSIMILE 213-624-1376

Steven T. Adams (State Bar No. 130846)
*s.adams@mpglaw.com*

Attorneys for Defendant NATIONAL FIRE & MARINE INSURANCE COMPANY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| DALE EVANS PARKWAY 2012, LLC<br><br>Plaintiff,<br><br>vs.<br><br>NATIONAL FIRE & MARINE INSURANCE COMPANY, a Corporation; and DOES 1-20, inclusive,<br><br>Defendant. | CASE No. 5:15-cv-00979-JGB-SP<br><br>[Assigned to Courtroom 1, Judge Jesus G. Bernal; Referred to Magistrate Judge Sheri Pym for Discovery Matters]<br><br>**DEFENDANT NATIONAL FIRE & MARINE INSURANCE COMPANY'S OPPOSITION TO PLAINTIFF DALE EVANS PARKWAY 2012, LLC'S MOTION TO QUASH SUBPOENA; DECLARATION OF STEVEN T. ADAMS**<br><br>Date: October 25, 2016<br>Time: 10:00 a.m.<br>Crtrm: 3 or 4, Third Floor<br><br>*[Filed Concurrently with Declaration of Steven T. Adams]* |
| AND RELATED CROSS-ACTION(S). | Trial Date: March 14, 2017 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 2

II. DISCUSSION .......... 4

A. Legal Standard .......... 4

B. The Subpoenaed Records Are Highly Relevant .......... 4

C. Plaintiff's Claim of Privilege and Privacy Do Not Prevent Production of the Subpoenaed Records .......... 6

D. Due to Plaintiff's Failure to Serve Banc of California with the Present Motion, the Bank Has Already Produced the Subpoenaed Documents to National Fire .......... 9

III. CONCLUSION .......... 10

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

1013043.1

i

Case No. 5:15-cv-00979-JGB-SP

DEFENDANT NATIONAL FIRE & MARINE INSURANCE COMPANY'S OPPOSITION TO PLAINTIFF DALE EVANS PARKWAY 2012, LLC'S MOTION TO QUASH SUBPOENA; DECLARATION OF STEVEN T. ADAMS

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Abercrombie and Fitch Stores, Inc.* (S.D. Cal., July 2, 2007, No. 06CV991-WQH (BLM)) 2007 WL 1994059 .................... 6

*Fortunato v.Super. Ct.*, 114 Cal.App.4th 475 (2003) .................... 7

*Hallett v. Morgan*, 296 F.3d 732 (9th Cir.2002) .................... 4

*Mem'l Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058 (7th Cir.1981) .................... 7

*Moon v. SCP Pool Corp.*, 232 F.R.D. 633 (C.D.Cal.2005) .................... 4

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) .................... 4

*R. Prasad Industries v. Flat Irons Environmental Solutions Corp.* (D. Ariz., June 20, 2014, No. CV-12-08261-PCT-JAT) 2014 WL 2804276 .................... 8, 9

*Valley Bank of Nev. v. Super. Ct.*,, 15 Cal.3d 652 (1975) .................... 7

**OTHER AUTHORITIES**

FRCP 26 .................... 4

FRCP 45 .................... 4, 6, 7

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

1013043.1

ii

Case No. 5:15-cv-00979-JGB-SP

DEFENDANT NATIONAL FIRE & MARINE INSURANCE COMPANY'S OPPOSITION TO PLAINTIFF DALE EVANS PARKWAY 2012, LLC'S MOTION TO QUASH SUBPOENA; DECLARATION OF STEVEN T. ADAMS

## I. INTRODUCTION

Dale Evans Parkway 2012, LLC ("Plaintiff") is suing National Fire & Marine Insurance Company ("National Fire") for insurance coverage for a theft loss occurring in April 2014, at Plaintiff's property located at 15000 Dale Evans Parkway, Apply Valley, California (the "Property"). National Fire paid the vandalism portion of the claim (made at the same time as the theft claim) in full ($200,000) but denied the theft portion of the claim on grounds Plaintiff had not complied with the insurance policy's "Protective Safeguards Endorsement," which required Plaintiff to maintain a functioning burglary alarm system at the site. Plaintiff concedes this is true—it did not maintain a functioning burglary alarm system at the site—but contends this express policy condition should be ignored because it was "impossible" for Plaintiff to comply. National Fire disagrees.[1]

The subject document subpoena to Plaintiff's lender, the Banc of California ("the Bank"), relates to Plaintiff's "impossibility" claim, which Plaintiff has defined differently at different times. First, Plaintiff took the position it was impossible to activate and maintain the existing burglar alarm system before the April 2014 loss, because to do so would have required a complete restoration of the Property's electrical system, which could not have been done in less than nine months, at a cost of not less than $500,000.[2] Second, Plaintiff explained (as it does in its present motion)[3] the maintenance of a functioning burglary alarm system was impossible because the funds needed to do so—which had been paid by Plaintiff's prior insurer

---

1 Plaintiff's "impossibility" claim has prompted serious questions about the information Plaintiff provided to National Fire as part of its application for insurance, including information concerning the condition of the Property and Plaintiff's specific representation the Property was "alarmed" with a Tyco Integrated Security system. In fact, Plaintiff's misrepresentations regarding the alarm system and its failure to provide complete loss information has led to National Fire's assertion of a rescission claim against Plaintiff.

2 Plaintiff's Opposition to National Fire's Motion for Summary Judgment; Declaration of Craig Fostrey, ¶ 9; Adams Declaration, ¶ 7.

3 Plaintiff's present Motion to Quash, at p. 4:15-17.

(CIG)—were not available because the Bank used the funds to pay down Plaintiff's loan on the Property instead of using the funds for restoring the Property's electrical system. (The inference being Plaintiff was not financially capable, without the CIG insurance money, to make the necessary repairs to the Property.)[4] Third, Plaintiff has claimed the maintenance of a functioning alarm system was "impossible" because such a system would not effectively secure the building.[5]

National Fire's subpoena to the Bank therefore sought the production of documents relating to the various iterations of Plaintiff's "impossibility" claims, including:

- The true condition of the Property (Categories 8-14)
- The CIG funds, including the decision made by Plaintiff and the Bank to use the funds to pay down Plaintiff's loan, as opposed to making the repairs to the Property for which they were earmarked (Categories 8-14)
- Plaintiff's financial capacity to make necessary repairs to the Property's electrical system, and thus activate the building's alarm system (Categories 5-7, and 9-13)
- Insurance claims, the National Fire policy and other coverage (Categories 8-15)
- Insurance requirements placed upon Plaintiff by the Bank (in the loan documents or otherwise) (Categories 1-4, and 15)
- Communications among the Bank, Plaintiff[6] and The Mahoney Group regarding any of the above

As a result, each category of subpoenaed documents sought materials relevant to issues raised by Plaintiff, and were sufficiently tailored to permit the Bank to identify and produce the documents in its possession. For these and other reasons

[4] The disposition of the CIG funds was also entirely within Plaintiff's control despite Plaintiff's suggestion to the contrary. In fact, the Bank would not use the funds to pay down the balance of Plaintiff's loan until it received a written request from Plaintiff to do so. Frances Fernandez-Bir deposition, at pp. 27:25 – 28:6; Joseph Michael deposition, at pp. 113:7 – 114:25; Adams Decl., ¶¶ 5-6.

[5] Deposition of Joseph Michael, pp. 116-119; Adams Decl., ¶ 5.

[6] Including Mr. Michael, Plaintiff's "sole managing member," and his development company. Plaintiff's Motion, at 3:17.

set forth below, Plaintiff's motion is without merit and should be denied.

## II. DISCUSSION

### A. Legal Standard

The threshold for discoverability under the Federal Rules of Civil Procedure ("FRCP") is broad, and considers whether the information sought is "relevant to any party's claim or defense and proportional to the needs of the case ..." FRCP 26(b)(1). The information within FRCP 26's scope "need not be admissible in evidence to be discoverable." *Id.* The relevance standard under the FRCP is therefore broad enough "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted). Accordingly, the Court has broad discretion to determine relevancy for discovery purposes. See *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir.2002).

Under FRCP 45, any party may serve a subpoena commanding a non-party to attend and give testimony or to produce and permit inspection and copying of documents. FRCP 45(a)(1)(B) - (D). The party moving to quash a subpoena has the burden of persuasion under Rule 45(e)(2). See also *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D.Cal.2005). Plaintiff, however, has made no attempt to meet this burden but has instead attempted to shift its burden to National Fire. The present motion should be denied on this ground alone.

### B. The Subpoenaed Records Are Highly Relevant

As discussed above, Plaintiff's recurring argument has been that it was "impossible" to comply with the Protective Safeguards Endorsement of the Policy because it was unable to repair the Property's electrical system and, consequently, could not power the burglary alarm system. (Declaration of Joseph Michael in Support of Plaintiff's Opposition to National Fire's Motion for Summary Judgment ("Michael Decl."), ¶ 15, pg. 6: 1-12; Adams Decl., ¶ 4. ) In the present motion, Plaintiff again points the finger at the Bank, claiming it was

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW
1013043.1 4 Case No. 5:15-cv-00979-JGB-SP
DEFENDANT NATIONAL FIRE & MARINE INSURANCE COMPANY'S OPPOSITION TO PLAINTIFF DALE EVANS PARKWAY 2012, LLC'S MOTION TO QUASH SUBPOENA; DECLARATION OF STEVEN T. ADAMS

> [U]nable to perform repairs [to the Property's electrical system] in part due to the fact that the insurance proceeds from CIG went to pay down the loan rather than to Plaintiff for use in repairing the electrical system at the property. Thus Plaintiff was unable to satisfy the "Protective Safeguards Endorsement" as its performance was impossible. [Motion to Quash, 4:15-19].

National Fire is therefore entitled to discovery to respond to Plaintiff's allegations and to counter its arguments, including the claim that it was "impossible" to comply with the Protective Safeguards Endorsement. Plaintiff's relationship with the Bank and all of the factors bearing upon the decision to use the CIG insurance money to pay down the Bank's loan on the Property instead of making repairs (including all of the information provided to the bank bearing on that decision), make the subpoenaed documents discoverable, if not directly relevant.[7]

For example, Plaintiff has repeatedly mentioned that the Bank thought it more prudent to use the insurance proceeds for purposes other than repair: "[The Bank] did not believe repairing the electrical system at the time was prudent given the vacancy of the Property and frequency of the vandalism." (Plaintiff's Motion, pg. 3:20-24.) (See also Michael Decl., ¶ 13, pg. 5: 10-14; Adams Decl., ¶ 4.) However, to the extent this is true, it appears the Bank was not properly advised of the effect putting off repairs would have on the National Fire insurance coverage. When the Bank was deposed, its representative, Ms. Fernandez-Bir, testified the Bank expects its borrowers to comply with insurance policy conditions to keep the insurance in effect and to protect the Bank's collateral. (Fernandez-Bir Deposition, at 33:19 – 24; Adams Decl. ¶ 6) She added the Bank expects its borrowers to tell it if the insurance—designed to protect the collateral—is no longer potentially in effect because the borrower has not met one of the conditions of the insurance policy.

---

7 Plaintiff provides no factual or legal support to support the narrow view that the "sole relevant transaction" for National Fire's discovery is the disposition of CIG funds ($503,987.00), including the reasons the Bank used them to pay down the balance of Plaintiff's loan instead of using them to make repairs to the Property. (Motion, at 4:26.)

(Fernandez-Bir Deposition, at 33:25 – 34:4; Adams Decl. ¶ 6) All information provided to the Bank concerning the condition of the Property, insurance coverage for the Property, including the need to make repairs at the Property to keep insurance coverage in effect, is discoverable and necessary to enable National Fire to properly prepare its defense for trial.

Likewise, information received by the Bank from Plaintiff, The Mahoney Group or others, concerning Plaintiff's claims to CIG, the CIG payment of claims, and the National Fire policy, are all discoverable for the same reasons. Also, communications, memoranda, and other records in the Bank's possession pertaining to the Property and Plaintiff are vital and relevant to understanding and countering Plaintiff's claim of coverage despite admittedly failing to comply with express policy conditions. The requested loan agreement is also discoverable because it defines the mutual obligations of Plaintiff and the Bank relating to the Property, particularly with respect to required insurance for the Property.

Moreover, since Plaintiff has made its relationship with the Bank and its financial capacity to make repairs to the Property issues in this matter, National Fire is entitled to conduct discovery concerning both. Nevertheless, the subpoena does not seek information or documents unrelated to the Property, nor does it seek information concerning any of Mr. Michael's other business dealings or financial transactions with the Bank. National Fire is, therefore, entitled to discovery to allow it to fully respond to Plaintiff's claims.

**C. Plaintiff's Claim of Privilege and Privacy Do Not Prevent Production of the Subpoenaed Records**

Plaintiff's claims of privilege and the right of financial privacy are qualified; they are not absolute. See *Anderson v. Abercrombie and Fitch Stores, Inc.* (S.D. Cal., July 2, 2007, No. 06CV991-WQH (BLM)) 2007 WL 1994059, at *6. FRCP 45(d)(3)(A)(iii) requires a court to quash or modify a subpoena only where the subpoena compels disclosure of a privileged or protected matter. The person

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

1013043.1 6 Case No. 5:15-cv-00979-JGB-SP

DEFENDANT NATIONAL FIRE & MARINE INSURANCE COMPANY'S OPPOSITION TO PLAINTIFF DALE EVANS PARKWAY 2012, LLC'S MOTION TO QUASH SUBPOENA; DECLARATION OF STEVEN T. ADAMS

claiming the privilege, however, must: "i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." FRCP 45(e)(2)(A)(i)-(ii). Plaintiff has not done so.

Federal Rule of Evidence ("FRE") 501 "provides the framework for determining whether material sought in discovery is privileged." *Mem'l Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir.1981). FRE 501 states that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."

Under California law, “confidential financial information given to a bank by its customers is protected by the right to privacy” under the California Constitution. *Fortunato v.Super. Ct.*, 114 Cal.App.4th 475, 480 (2003) (quoting *Valley Bank of Nev. v.Super. Ct.*, 15 Cal.3d 652, 656 (1975).) A balancing test is applied for considering the competing interests of protecting financial privacy to the subpoenaing party's right to discovery. A court may allow discovery of private financial records from a bank after "carefully balanc[ing] 'the right of civil litigants to discover relevant facts, on the one hand, with the right of bank customers to maintain reasonable privacy regarding their financial affairs, on the other.'" *Id.* at 481. Financial privacy extends to confidential information, including “tax returns, checks, statements, or other account information.” *Id.* Relevant factors when applying the balancing test include: "[1] the purpose of the information sought, [2] the effect that disclosure will have on the parties and on the trial, [3] the nature of the objections urged by the party resisting disclosure, and [4] ability of the court to make an alternative order which may grant partial disclosure, disclosure in another form, or disclosure only in the event that the party seeking the information undertakes certain specified burdens which appear just under the circumstances." *Id.* (quoting *Valley Bank of Nev.*, 15 Cal.3d at 658).

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW
1013043.1
7
Case No. 5:15-cv-00979-JGB-SP
DEFENDANT NATIONAL FIRE & MARINE INSURANCE COMPANY'S OPPOSITION TO PLAINTIFF DALE EVANS PARKWAY 2012, LLC'S MOTION TO QUASH SUBPOENA; DECLARATION OF STEVEN T. ADAMS

Purpose of the Information Sought: The information sought by the subpoena is for the purpose of evaluating and challenging Plaintiff's recurring claim it was "impossible" for it to comply with the Protective Safeguards Endorsement in the National Fire policy because, for various reasons, the Property's electrical system could not be repaired. Communications, memoranda, agreements, etc. are all pertinent to this issue, and are discoverable. They are not the type of documents intended to be protected under California's Constitutional privacy standard. Additionally, the insurance documents sought, including loan agreements defining the bank's insurance requirements for the Property—and any communications relating to them—are not within the protected class, and are directly relevant to the issues to be decided at trial.

Effect that Disclosure will have on the Parties: The Bank's disclosure of the subpoenaed documents will assist National Fire in addressing Plaintiff's claims and will not prejudice Plaintiff. Plaintiff has raised issues in the litigation that have made these documents relevant. Also, the requested items, including the Bank's communications with non-parties, such as the Mahoney Group, regarding the Property and related insurance are relevant and do not include even potentially private financial information of Plaintiff.

Nature of the Objections Urged by the Plaintiff: Plaintiff's claims of privilege and financial privacy are extremely vague, non-specific, and without supporting authority.[8] Plaintiff has not provided a privilege log indicating which records it deems protected. Plaintiff "has not articulated how the disclosure will harm [it or Joseph Michael individually] beyond a general intrusion into … privacy." *R. Prasad Industries v. Flat Irons Environmental Solutions Corp.* (D. Ariz., June 20,

[8] Plaintiff's reference to Joseph Michael as a non-party is misleading (Motion, at 4:24). Mr. Michael is the "sole managing member" of Plaintiff (Motion, at 3:17). He is the sole owner of Plaintiff and if one communicates with Plaintiff, he or she is communicating with Mr. Michael. Mr. Michael also refers to himself in the "first person" as the Plaintiff. (Michael Declaration, ¶ 2; Adams Declaration, ¶4.)

2014, No. CV-12-08261-PCT-JAT) 2014 WL 2804276, at *5. "While [Plaintiff's] privacy interest alone does have value, because [it] did not outline more specific harms that [it] would suffer as a result of disclosure of [its] banking records, [the third] factor [above] does not weigh as heavily in favor of nondisclosure as it otherwise might have." *Id.* at *6. Additionally, Plaintiff has cited no supporting authority for its privilege and privacy claims, especially the extent to which Plaintiff, a Limited Liability Company, has privacy rights.

Plaintiff's claim that the subpoena is overly broad is likewise unfounded, and similar to the position advanced by the party seeking to quash a subpoena in *R. Prasad Industries v. Flat Irons Environmental Solutions Corp.* There, the moving party objected to the disclosure of all transactions in her bank account, rather than limiting disclosure to records confirming receipt of a particular wire transfer. The Court there denied the motion, finding that the subpoenaing party articulated reasons why the bank information was relevant, as the bank transactions could show defendants acted in good faith in attempting to make a purchase. *Id.* at *5.

Ability of the Court to Make an Alternative Order: Lastly, National Fire has offered and is amenable to entering into a protective order, agreeing to only use the records provided by the Bank in the context of this litigation and to promptly return them upon final resolution of the instant matter.

National Fire is therefore entitled to the documents sought by the subpoena and an order accepting the Bank's disclosure is warranted after a weighing of the competing interests of the parties.

**D. Due to Plaintiff's Failure to Serve Banc of California with the Present Motion, the Bank Has Already Produced the Subpoenaed Documents to National Fire**

On September 29, 2016, Banc of California delivered to the offices of National Fire's counsel, the Declaration of Frances Fernandez-Bir, along with a CD containing the documents it deemed responsive to the subpoena, except "to the

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW
1013043.1 9 Case No. 5:15-cv-00979-JGB-SP
DEFENDANT NATIONAL FIRE & MARINE INSURANCE COMPANY'S OPPOSITION TO PLAINTIFF DALE EVANS PARKWAY 2012, LLC'S MOTION TO QUASH SUBPOENA; DECLARATION OF STEVEN T. ADAMS

extent that any records [produced] do not contain confidential or proprietary information of the Bank."[9]

Tammy Nguyen, a representative of the bank, later indicated to National Fire's counsel that the Bank's documents were produced to National Fire because the Bank did not receive a motion to quash from Plaintiff.

As a result of Plaintiff's failure to serve the Bank with the present motion, Plaintiff's motion is now moot.

## III. CONCLUSION

The documents sought by the National Fire subpoena are directly relevant to issues raised by Plaintiff in this action and are within the proper scope of discovery under the FRCP. Additionally, Plaintiff's claims of privilege and privacy are vague and unfounded, and otherwise fail when balanced against National Fire's need for the information contained in the subpoenaed documents. Finally, the present motion is moot, as the Banc of California has already produced the subpoenaed documents to National Fire. National Fire, therefore, respectfully requests that Plaintiff's Motion be denied.

DATED: October 11, 2016 MUSICK, PEELER & GARRETT LLP

By: */s/ Steven T. Adams*
Steven T. Adams
Attorneys for Defendant NATIONAL FIRE & MARINE INSURANCE COMPANY

9 Declaration of Frances Fernandez-Bir, attached as Exhibit 1, to the accompanying Declaration of Steven T. Adams.

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is One Wilshire Boulevard, Suite 2000, Los Angeles, CA 90017-3383.

On October 11, 2016, I served true copies of the following document(s) described as **DEFENDANT NATIONAL FIRE & MARINE INSURANCE COMPANY'S OPPOSITION TO PLAINTIFF DALE EVANS PARKWAY 2012, LLC'S MOTION TO QUASH SUBPOENA; DECLARATION OF STEVEN T. ADAMS** on the interested parties in this action as follows:

| | |
|---|---|
| Marc S. Shapiro, Esq.<br>Kyle L. Bagley, Esq.<br>Christopher G. Kerr, Esq.<br>HANGER, STEINBERG, SHAPIRO & ASH<br>21031 Ventura Boulevard, Suite 800<br>Woodland Hills, CA 91364<br>(818) 226-1222 – Telephone<br>(818) 226-1215 – Facsimile<br>Email: *mss@hssalaw.com* | Attorneys for Plaintiff<br>*Dale Evans Parkway 2012, LLC* |
| Myles P. Hassett, Esq.<br>THE HASSETT LAW FIRM, P.L.C.<br>1221 East Osborn Road, Suite 200<br>Phoenix, Arizona 85014<br>(602) 264-7474 – Telephone<br>(602) 264-6541 – Facsimile<br>Email: mph@hassettlawfirm.com | Attorneys for Defendant/Cross-Claimant M&O Agencies, Incorporated, d/b/a The Mahoney Group |
| Lawrence Borys, Esq.<br>Pascale Gagnon, Esq.<br>ROPERS, MAJESKI, KOHN & BENTLY<br>445 S. Figueroa Street, Suite 3000<br>Los Angeles, CA 90071<br>(213) 312-2000 – Telephone<br>(213) 312-2001 – Facsimili<br>Emails: lawrence.borys@rmkb.com<br>pascale.gagnon@rmkb.com | Attorneys for Defendant/Cross-Claimant M&O Agencies, Incorporated, d/b/a The Mahoney Group |

☒ **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Musick, Peeler & Garrett LLP for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is

deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at Los Angeles, California.

☒ **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 11, 2016, at Los Angeles, California.

*/s/ Claire C. De Los Reyes*
Claire C. De Los Reyes