MYLES P. HASSETT (SBN 0147888)
JAMIE A. GLASSER (SBN 029729) *Pro Hac Vice*
THE HASSETT LAW FIRM, P.L.C.
1221 East Osborn Rd., Suite 200
Phoenix, Arizona 85014-5541
Telephone: (602) 264-7474
Facsimile:   (602) 264-6541
Email:  mph@hassettlawfirm.com
          jamie@hassettlawfirm.com

LAWRENCE BORYS (SBN 60625)
PASCALE GAGNON (SBN 207117)
ROPERS, MAJESKI, KOHN & BENTLEY
445 South Figueroa St., Ste. 3000
Los Angeles, California 90071-1619
Telephone: (213) 312-2000
Facsimile:   (213) 312-2001
Email:  lawrence.borys@rmkb.com
          pascale.gagnon@rmkb.com

*Attorneys for Defendant/Cross-Defendant/Cross-Claimant*
*M&O Agencies, Incorporated, d/b/a The Mahoney Group*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| DALE EVANS PARKWAY 2012 LLC, <br><br> Plaintiff, <br> v. <br><br> NATIONAL FIRE AND MARINE INSURANCE COMPANY, a Corporation; THE MAHONEY GROUP, a Corporation; and DOES 1-20, inclusive, <br> Defendants. | Case No. 5:15-cv-00979-JGB-SP <br><br> Judge:  Hon. Jesus G. Bernal, <br><br> **DEFENDANT THE MAHONEY GROUP'S MOTION FOR SUMMARY JUDGMENT** <br><br> Hearing Date: January 9, 2017 <br> Time 9:00 a.m. <br> Courtroom: 1(Riverside) <br><br> TRIAL DATE:  March 14, 2017 |
| AND RELATED CROSS-ACTIONS. | |

1

# TABLE OF CONTENTS

2

3  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

4      1.  Factual Background  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

5
6      2.  Summary judgment standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

7      3.  Mahoney satisfied its limited duty to Dale Evans as a matter of law . . . . . . .   6

8
       4.  Mahoney is not liable to Dale Evans for negligence . . . . . . . . . . . . . . . . . . .  7
9
10         A.  No vacant commercial property policy was
               available to Dale Evans that did not also
11             include a Protective Safeguards endorsement . . . . . . . . . . . . . . . . . . . . . . .  8

12
           B.  An alternative "Builders Risk" policy was not
13             available to Dale Evans and was not
               appropriate for Dale Evans' operations . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
14

15     5.  Mahoney is not liable for negligent misrepresentation . . . . . . . . . . . . . . . . . . 13

16
       6.  Mahoney cannot be held liable to
17         Dale Evans for breach of fiduciary duty . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

18
           A.  Mahoney did not owe Dale Evans a fiduciary duty . . . . . . . . . . . . . . . . . 16
19
           B.  Mahoney satisfied any fiduciary duties as a matter law . . . . . . . . . . . . . . 17
20

21     7.  Summary judgment in favor of Mahoney
           is also warranted on Dale Evans' Cross-Claims  . . . . . . . . . . . . . . . . . . . . . . . .19
22

23  CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

24

25

26

27

28

1

2

# TABLE OF AUTHORITIES

3

<u>CASES</u>

4

5

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

6

7

*Giacometti v. Aulla, LLC,*
187 Cal.App.4th 1133 (App. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

8

*Guidroz-Brault v. Missouri Pacific R. Co.,*
254 F.3d 825 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

9

10

*Hadland v. NN Investors Life Ins. Co.,*
 24 Cal.App.4th 1578 (App. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

11

*Haggans v. State Farm Fire and Cas. Co.,*
803 So. 2d 1249 (Miss. App. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

12

13

*Hydro-Mill Co., Inc. v. Hayward, Tilton and Rolapp Ins. Associates, Inc.,*
115 Cal.App.4th 1145 (App. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

14

*Kendall-Kackson Winery, Ltd. v. Superior Court,*
76 Cal.App.4th 970 (App. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

15

16

*Pacific Rim Mechanical Contractors, Inc. v. Aon Risk Ins. Services West, Inc.,*
203 Cal.App.4th 1278 (App. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

17

*Southern Scales, Inc. v. Aronov Ins., Inc.,*
608 So.2d 724 (Ala. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

18

19

*UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.,*
117 F.Supp.3d 1092 (USDC C.D. Cal. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

20

*Wilson v. All Service Ins. Corp.,*
 91 Cal.App.3d 793 (App. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 16

21

22

*XM International v. China Ocean Shipping Co.,*
121 F.Supp.2d 301 (S.D. N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

23

<u>STATUES AND RULES</u>

24

Fed. R. Civ. P. 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

25

Fed. R. of Evid. 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

26

27

28

*Ropers Majeski Kohn & Bentley*
*A Professional Corporation*
*Los Angeles*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# INTRODUCTION

Defendant M&O Agencies, Incorporated, d/b/a The Mahoney Group ("Mahoney") moves for summary judgment on the claims of plaintiff Dale Evans Parkway 2012, LLC ("Dale Evans").

Despite signing an insurance quote and application requiring that its vacant property have protective safeguards (a burglary alarm), Dale Evans now complains that Mahoney breached its duties as an insurance broker by procuring a policy that included an endorsement requiring such safeguards as a condition of coverage. But there's no competent evidence that a policy was available without such an endorsement, negating any claim that Mahoney's conduct caused Dale Evans' loss.

Dale Evans also complains that Mahoney misrepresented the coverage provided by defendant National Fire & Marine Insurance Company ("National Fire"), but Mahoney provided only accurate information about the policy, which was delivered to Dale Evans and obtained based on a quote and application signed by Dale Evans, on which it indicated the Property had a burglary alarm monitored by a security company.

As a matter of law, there's also no basis for Dale Evans' claim of breach of fiduciary duty. Insurance agents owe fiduciary duties to their customers only in a very limited range of circumstances, none of which are implicated here.

As more fully discussed below, the Court should grant Mahoney summary judgment on all of Dale Evans' claims.

**1.      Factual Background.**

On July 11, 2012, plaintiff Dale Evans purchased real estate at 15000 Dale Evans Parkway in Apple Valley, California (the "Property") for approximately $3.035 million. (Mahoney's Statement of Facts ["SOF"] 1.) The Property included a vacant 140,000 square foot building that was constructed in 2007 and previously operated as a Lowe's Home Improvement Store. (SOF 2.) Joseph Michael is the managing member of Dale Evans. (SOF 3.)

Following its purchase of the Property, Dale Evans (through Mr. Michael) purchased a policy from insurer Capital Insurance Group ("Capital") through Mahoney. (SOF 4.) Dale Evans sustained theft/vandalism events at the Property in December 2012 and April 2013 for which it submitted claims to Capital. (SOF 5.)

As a result of the December 2012 and April 2013 losses, the Property's electrical system was not functional, and Dale Evans took no steps to repair or replace it. (SOF 6.) On August 19, 2013, Capital paid $503,987.00 for damages caused to the Property by the December 2012 and April 2013 incidents. (SOF 7.) In May 2013, Capital informed Mahoney that it would decline to renew Dale Evans' policy due to the loss history. (SOF 8.)

Mahoney then assisted Dale Evans with completing a Commercial Insurance Application (the "Application") on May 22, 2013. (SOF 9.) The application included a loss run report—also generated on May 22, 2013—showing prior losses. (SOF 10.) On July 23, 2013, Mahoney submitted the Application to defendant National Fire. (SOF 11.)

On July 25, 2013, Dale Evans submitted a "WKF&C Vacant Property Supplement" (the "Supplement") to its Application, completed and signed by Mr. Michael. (SOF 12.)

As seen below, Mr. Michael there represented that the Property was "Alarmed," with a "Tyco Integrated Security" system. (SOF 12.) A checkbox marked in the Supplement additionally indicated that "Water" was the only operational utility, and that "Gas" and "Electricity" were not operational. (SOF 12.)

WKF&C Vacant Property Supplement
in addition to Acord Property Application

**General Information**

Named Insured _Dale Evans 2012, LLC_
        Principal Owners    _Dale Evans 2012, LLC_

Percent of Building Vacant   _100%_          Age of building   _Built 2007_
Reason for Vacancy   _Marketing to Lease_
Date of last Occupancy   _Appx 3 years ago_
Prior Occupancy   _Lowe's Home Improvement Center_
Intended use   _Retail_
Expected Date of Occupancy   _Within the next 12 months_
Any pending appeals to change property zoning?   Yes ___   No _✗_

_Renovations are not permitted during the policy period._
_Note if renovations are scheduled please contact our Inland Marine Department._

| | Gas | Water | Electric |
|---|---|---|---|
| Are Utilities operational ? | | ✓ | |

**Security**

Building

| Boarded | Locked | Fenced | Alarmed | If Alarmed specify Type |
|---|---|---|---|---|
| | | | ✓ | _Tyco Integrated Security_ |

Neighborhood

| Industrial | Residential | Commercial | Rural |
|---|---|---|---|
| | ✓ | ✓ | |

Frequency of building inspection    Daily   Weekly ✓   Monthly

**Valuation**

| RCV | _$20,912,000.00_ | Square Footage | _139,410_ |
|---|---|---|---|
| ACV | ✗ | | |
| Purchase Price | _$3,050,000.00_ | Date of Purchase | _8/6/12_ |

**Financial**

Are all real estate taxes paid?          Yes _✗_   No____
Are all Mortgage obligations fully paid to date ?   Yes _✗_   No____
Any liens (other than mortgage) against the property?   Yes ___   No _✗_
Is any insured, insured affiliate, or principal in bankruptcy or
currently in the process of filing for bankruptcy?   Yes ___   No _✗_

**Loss Information**

Any losses at this property in the past 36 months?   Yes _✗_   No____
Any losses at any other properties owned or managed by the insured
in the past 36 months?   Yes ___   No _✗_

The above information is material to WKF&C. Please reference the Acord application re false or fraudulent information.

Applicant Signature _[signature]_          Producer Signature _____

DEPOSITION EXHIBIT

(SOF 12.)

On August 2, 2013, National Fire sent Mahoney Group a property

insurance policy quote for Dale Evans. (SOF 13.) Dale Evans' principal, Mr.

Michael, confirmed receipt of the quote by signing it on August 3, 2013. (SOF

14.) The quote included coverage for theft, with applicable coverage sub-limits

for copper theft and vandalism. (SOF 15.) The quote contained an outline of

the terms and conditions in the insurance policy, including a "Protective Safeguards" endorsement. (SOF 16.) That endorsement required Dale Evans to maintain a functioning "Automatic Burglary Alarm" protecting the entire building, which signaled to an outside central station. (SOF 17.) The endorsement also stated National Fire would "not pay for loss or damage caused by or resulting from fire, water, or theft if, prior to the loss, you…[f]ailed to maintain any protective safeguard." (SOF 18.)

In April 2014, Dale Evans contacted National Fire and reported that it had suffered losses due to theft and vandalism at the Property. (SOF 19.) Before April 2014, Dale Evans had not repaired the Property's electrical system. (SOF 20.) At the time of April 2014 incident, the Property also remained without electricity and lacked a functioning burglary alarm. (SOF 21.)

National Fire investigated Dale Evans' claim and confirmed there was no operating burglary alarm system at the Property at the time of the April 2014 theft. (SOF 22.) National Fire paid the vandalism portion of Dale Evans' claim in full, for the policy sub-limit of $200,000, but denied the theft portion because of Dale Evans' failure to comply with the Protective Safeguards endorsement. (SOF 23.)

This Court has previously ruled that Dale Evans is bound by the Protective Safeguards endorsement unless it can show that it was impossible for Dale Evans to comply with its requirements. (SOF 24.)

**2.      Summary judgment standard.**

Summary judgment is appropriate when the evidence produced shows there is no genuine question of fact, or has so little probative value that reasonable people could not differ in the conclusions to be drawn from that evidence. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Here, there are no material facts in dispute and Mahoney is entitled to summary judgment as a matter of law.

**3.      Mahoney satisfied its limited duty to Dale Evans as a matter of law.**

"Whether a duty of care exists is a question of law for the court." W*ilson v. All Service Ins. Corp.,* 91 Cal.App.3d 793, 796 (App. 1979). Under California law, "insurance brokers owe a limited duty to their clients to use reasonable care, diligence, and judgment in *procuring* the insurance requested by an insured." *Pacific Rim Mechanical Contractors, Inc. v. Aon Risk Ins. Services West, Inc.*, 203 Cal.App.4th 1278, 1284-85 (App. 2012) (emphasis in original, internal citation and quotation marks omitted). Insurance brokers owe no duty to verify every aspect of their clients' coverage. *See id.* (broker has no duty to notify its client of insurer's insolvency).

- 6 -

Dale Evans does not allege that Mahoney failed to procure theft coverage. (*See generally*, Doc. 63.) Indeed, the Property was insured for theft. (SOF 15.) Instead, Dale Evans' claim is premised on the unviable notion that Mahoney had a duty to ensure that Dale Evans could satisfy every condition precedent to coverage (as applicable here, that the Property had a functional burglary alarm). Mahoney owed no such duty to Dale Evans. Accordingly, Dale Evans' negligence claims should be dismissed as a matter of law.

**4.      Mahoney is not liable to Dale Evans for negligence.**

A plaintiff asserting a professional malpractice claim must prove that the defendant's negligence was the actual and proximate cause of injury, and damages. *Giacometti v. Aulla, LLC*, 187 Cal.App.4th 1133, 1137 (App. 2010).

In its Second Cause of Action (professional negligence), Dale Evans alleges Mahoney acted negligently 1) by failing to timely notify National Fire about the April 2013 loss when submitting the May 2013 Application, and 2) in procuring a policy that included a protective safeguards requirement that Dale Evans alleges Mahoney was aware could not be satisfied. (Doc. 63 ¶¶ 36-42.)

As discussed below, Dale Evans' negligence claims lack factual and legal support, and Mahoney should be granted summary judgment because no vacant commercial property insurance was available without the required Protective Safeguards endorsement. Moreover, Dale Evans was aware of the

- 7 -

protective safeguards requirement but chose not to take any measures to comply with it.

**A.     No vacant commercial property policy was available to Dale Evans that did not also include a Protective Safeguards endorsement.**

Dale Evans alleges Mahoney is liable for failing to procure theft and vandalism coverage for Dale Evans that would not have been subject to a Protective Safeguards endorsement. (Doc. 63, ¶¶ 39-41.) But no coverage was available to Dale Evans that would have covered theft and vandalism without a requirement that Dale Evans also have protective safeguards in place at the Property. (SOF 25.) If coverage was not reasonably available for Dale Evans' theft and vandalism claims without a Protective Safeguards endorsement, Mahoney cannot be held liable for not procuring a nonexistent policy. *See Haggans v. State Farm Fire and Cas. Co.*, 803 So. 2d 1249, 1252 (Miss. App. 2002) ("If no insurance could have been obtained, then a duty to procure insurance could not have been breached."); *Southern Scales, Inc. v. Aronov Ins., Inc.*, 608 So.2d 724 (Ala. 1992) (affirming summary judgment for insurance agent where coverage insured claims it was supposed to have was "not generally available" in the insurance marketplace); *XM International v. China Ocean Shipping Co.*, 121 F.Supp.2d 301, 305 (S.D. N.Y. 2000). (Where plaintiff offered no evidence insurance agent "could have procured insurance for break bulk shipments of

- 8 -

nails," summary judgment in favor of agent for supposed failure to procure that coverage was thus appropriate.)

Dale Evans has offered no evidence that a vacant property policy was available <u>without</u> a Protective Safeguards endorsement. To the contrary, Dale Evans' insurance agent standard-of-care expert (and successor insurance agent to Mahoney on the Property), John Anderson, conceded that no vacant property policy was available that did not also include a Protective Safeguards endorsement. (SOF 26.)

Because no vacant property insurance policy was reasonably available to Dale Evans without also requiring protective safeguards at the Property, Mahoney cannot be held liable for failing to procure that coverage. *See Haggans*, *Southern Scales, Inc.*, and *XM International*, *supra*.

**B.     An alternative "Builders Risk" policy was not available to Dale Evans and was not appropriate for Dale Evans' operations.**

Having conceded that no vacant property policy was available without a Protective Safeguards endorsement, and despite having no information to suggest the Property was in any manner under construction, Dale Evans' expert John Anderson testified that Mahoney should have done "what I did and write a builders risk." (SOF 27.) As outlined below, there's no legitimate basis for placing a Builders Risk policy on this vacant Property where there's been no construction activity since it was purchased in 2012. (SOF 28.) The contention

that Mahoney could have or should have procured a Builders Risk policy for Dale Evans is thus entirely unsupported. Regardless, even a Builders Risk policy would have included a Protective Safeguards endorsement.

According to International Risk Management Institute, Inc. ("IRMI"), an insurance industry resource that includes definitions of commonly used terms designed "to help those within and outside the insurance industry to communicate effectively," a Builders Risk policy is a "property insurance policy that is designed to cover property in the course of construction." (SOF 29.) IRMI's definition comports with a commonsense understanding that a Builders Risk policy provides insurance where actual construction is taking place.

First, the Property was indisputably not under construction on July 23, 2014, when Mahoney submitted Dale Evans' application to National Fire. (SOF 30.) There's also no evidence Dale Evans had any intent to undertake construction at that time. Accordingly, a Builders Risk insurance policy simply was not available, and was not appropriate for Dale Evans' operations.

Second, Mr. Anderson's claim that he was later able to secure Builders Risk coverage for the Property under (apparently) the same conditions—where no construction was planned or took place—does not change the fact that such coverage was not properly available and not appropriate. Mr. Anderson instead conceded that the Builders Risk application he submitted for Dale Evans

contains numerous untruthful statements, giving the false impression that construction was taking place or was actually intended to take place at the Property, that security guards were monitoring the Property, and that the Property had no losses within the three years preceding the application. (SOF 31.)

Accordingly, Mr. Anderson's claim that Mahoney should have placed Dale Evans with a Builders Risk policy is inadmissible speculation; there's simply no evidence that a Builders Risk policy would have been issued had Dale Evans included accurate information on its application. *See Guidroz-Brault v. Missouri Pacific R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001). (Federal Rule of Evidence 702 "requires that expert testimony relate to scientific, technical, or other specialized knowledge, which does not include unsupported speculation and subjective beliefs.")

Third, Mr. Anderson conceded that a Builders Risk policy without a protective safeguards requirement was only available for a six-month policy term, following which, only Builders Risk policies <u>with</u> the Protective Safeguards endorsement were available. (SOF 32.) Indeed, the initial policy Mr. Anderson procured for Dale Evans was a six-month Builders Risk policy incepting in August 2014 with Zurich Insurance Company that did not require protective safeguards. (SOF 33.) Near the end of the six-month term, Zurich

- 11 -

inspected the property, discovered no construction work whatsoever had been done, and declined to renew the policy. (SOF 34.) Mr. Anderson explained that Zurich does not "want to be insuring vacant buildings with no exclusions for months and years and years and years. They're willing to take a chance on six months, but if you don't do it in six months, they -- they bail." (SOF 35.)

When Zurich "bailed," Mr. Anderson assisted Dale Evans with purchasing a Builders Risk policy with Scottsdale Indemnity Company. (SOF 36.) The Scottsdale policy contained a Protective Safeguard endorsement which, similar to the endorsement included with the National Fire policy, "conditioned theft coverage on compliance with the protective safeguards requirements." (SOF 37.) Mr. Anderson admitted no other policy was available to Dale Evans that did not contain that endorsement. (SOF 38.) Thus, even if Mahoney procured the six-month Zurich policy (without a Protective Safeguards endorsement) for Dale Evans in August 2013, that policy would have expired in February 2014, before the subject April 2014 theft incident. Mr. Anderson admitted that no policy would have been available to Dale Evans after a six-month period that did not include protective safeguards requirements.

In sum, Dale Evans cannot show that any Builders Risk insurance was reasonably available to it that did not also contain a protective safeguards

endorsement. To the contrary, Mr. Anderson confirmed that a Builders Risk policy was available only by misrepresenting that construction was occurring. (SOF 39.) Even then, Mr. Anderson conceded he was only able to secure a six-month policy with Zurich. (SOF 40.) After the Zurich policy non-renewed (because no construction had taken place), Mr. Anderson could not locate any policy (even a Builders Risk policy) that did not include a Protective Safeguards endorsement. (SOF 41.)

Mahoney accordingly cannot be held liable for failing to obtain a Builders Risk policy since that policy was not available to Dale Evans and, regardless, would have still required Dale Evans to maintain protective safeguards.

**5.    Mahoney is not liable for negligent misrepresentation.**

In its Third Cause of Action (negligent misrepresentation), Dale Evans alleges that Mahoney misrepresented Dale Evans' loss history to National Fire by not informing National Fire of the April 2013 loss at the Property, and misrepresented to Dale Evans that the National Fire policy covered damages arising out of a theft occurrence. (Doc. 63, ¶¶ 43-53.)

First, whether Mahoney misrepresented Dale Evans' loss history to National Fire (which it did not) cannot form the basis of Dale Evans' negligent misrepresentation claim. There's no evidence that had National Fire been

- 13 -

informed of the April 2013 loss it would have waived the Protective Safeguards endorsement, or that any other insurance would have been available to Dale Evans that did not include a Protective Safeguards endorsement. To the contrary, Dale Evans' standard-of-care expert, Mr. Anderson, testified that coverage without a Protective Safeguards requirement is not available because insurers "don't want to be insuring vacant buildings with no exclusions for months and years and years and years." (SOF 42.) Thus, no matter Mahoney's conduct, any theft coverage Dale Evans purchased would have included a Protective Safeguards endorsement. Accordingly, whether Mahoney notified National Fire about the April 2013 makes no difference and could not have caused Dale Evans not to have theft coverage. *See* Motion, Sections 4(A)-(B), *supra*.

Second, Dale Evans' claim that Mahoney misrepresented to it that the National Fire policy included coverage for theft is unsupported by any facts. Indeed, it's undisputed that the Policy included coverage for theft. (SOF 43.) Mahoney thus made no false representations about the Policy's coverage. That the Policy's theft coverage was subject to a protective safeguards requirement does not mean that Mahoney somehow misrepresented the coverage. To the contrary, Dale Evans was aware of the protective safeguards requirement because its principal Joseph Michael signed the insurance quote acknowledging

that requirement and received a copy of the policy including the endorsement. (SOF 44.); *See Hadland v. NN Investors Life Ins. Co.,* 24 Cal.App.4th 1578, 1589 (App. 1994) ("The Hadlands, having failed to read the policy and having accepted it without objection, cannot be heard to complain it was not what they expected. Their reliance on representations about what they were getting for their money was unjustified as a matter of law.")

Dale Evans' stated belief that it understood that it was somehow excused from complying with the protective safeguard requirement is not based on any misrepresentation by Mahoney. To the contrary, Mahoney provided the quote to Dale Evans showing the inclusion of the Protective Safeguards endorsement and gave Dale Evans only accurate information about the Policy's coverage.

Moreover, any claim by Dale Evans' that Mahoney misrepresented that the policy covered theft notwithstanding Dale Evans' non-compliance with the protective safeguards requirement is barred because in the Supplement (shown above), Mr. Michael misrepresented to Mahoney and National Fire that the Property had an operational burglary alarm. *See Kendall-Kackson Winery, Ltd. v. Superior Court*, 76 Cal.App.4th 970, 978 (App. 2009) (The doctrine of unclean hands "demands that a plaintiff act fairly in the matter for which he seeks a remedy.")

- 15 -

Absent any affirmative misrepresentation, Dale Evans' negligent misrepresentation claims fail as a matter of law. *See UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*, 117 F.Supp.3d 1092, 1111 (USDC C.D. Cal. 2015).

**6.     Mahoney cannot be held liable to Dale Evans for breach of fiduciary duty.**

In its Fourth Cause of Action, Dale Evans alleges Mahoney "owed a fiduciary duty to Plaintiff to procure a valid insurance policy that would provide theft and vandalism coverage to the property." (Doc 63, ¶ 55.) Dale Evans cannot prevail on its fiduciary duty claims against Mahoney as a matter of law because Mahoney owed no fiduciary duty to Dale Evans and, even if it did, Mahoney satisfied its duty as a matter of law.

**A.     Mahoney did not owe Dale Evans a fiduciary duty.**

"Whether a duty of care exists is a question of law for the court." *Wilson, supra.* Controlling California law recognizes that insurance producers owe their clients fiduciaries duties only with respect to handling money, avoiding conflicts of interest, self-dealing, and excessive compensation. *See Hydro-Mill Co., Inc. v. Hayward, Tilton and Rolapp Ins. Associates, Inc.*, 115 Cal.App.4th 1145, 1158 (App. 2004) (California courts have not recognized any additional fiduciary duties owed by insurance producers to their clients).

Dale Evans does not (and cannot) claim that Mahoney mishandled its money, had a conflict of interest, engaged in self-dealing, received excessive compensation, or engaged in any other conduct that could form the basis of a breach of fiduciary duty claim. Instead, Dale Evans' allegations that 1) Mahoney failed to obtain appropriate insurance for the Property; 2) provided incorrect information to Dale Evans about the nature of the insurance; and 3) did not inform National Fire about the April 2013 loss, do not implicate any fiduciary responsibilities.

This Court should accordingly dismiss Dale Evans' fiduciary duty claims because Dale Evans' claims against Mahoney do not implicate any fiduciary duties.

**B.     Mahoney satisfied any fiduciary duties as a matter law.**

Even if Mahoney owed Dale Evans a fiduciary duty, Dale Evans offers no facts to support that Mahoney breached any such duty.

First, Dale Evans claims that Mahoney failed to procure appropriate insurance for the Property. As outlined above in Section 4(A) and (B), there's no evidence that any insurance was available to Dale Evans that did not also include a protective safeguards requirement, so Mahoney cannot be held liable for not helping Dale Evans purchase a nonexistent insurance policy.

Second, Dale Evans' claim that Mahoney was aware that Dale Evans could not comply with the protective safeguards requirement and thus misrepresented to Dale Evans that the National Fire policy covered theft is unsupported. Indeed, Dale Evans offered no evidence whatsoever that Mahoney indicated National Fire waived the Protective Safeguards requirement or otherwise represented to Dale Evans that it had insurance coverage notwithstanding its failure to comply with the Policy's requirements for coverage.

Third, Dale Evans' complaint that Mahoney breached its fiduciary duty by not providing an updated loss run to Dale Evans is unsupported. Instead, as outlined above in Section 5, whether Mahoney provided an updated loss run to National Fire could not have caused Dale Evans not to be insured for theft. Indeed, there's no evidence that if Mahoney notified National Fire of the April 2013 loss that National Fire would have waived the protective safeguards requirement. Moreover, there's no evidence any insurance was available to Dale Evans that would not have included a protective safeguards requirement.

Because Dale Evans disclosed no evidence that Mahoney breached a (nonexistent) fiduciary duty, the Court should grant Mahoney summary judgment on that claim.

**7.   Summary judgment in favor of Mahoney is also warranted on Dale Evans' Cross-Claims.**

The Cross-claim (Doc. 81) relies on the same allegations as Dale Evans' First Amended Complaint (Doc. 63) concerning the submission of the application and the issuance of a policy with a Protective Safeguards endorsement. *See* First Amended Complaint ¶¶ 7-11 (Doc. 63); Cross-claim ¶¶ 5-8 (Doc. 81). As discussed above, Mahoney is not liable to Dale Evans on its claims of negligence, misrepresentation or breach of fiduciary duty. Because Dale Evans' Cross-claim depends on those same failed claims, it cannot equitably recover in indemnity or contribution that which it is precluded from seeking directly against Mahoney. Summary judgement should accordingly be granted on Dale Evans' Cross-claim against Mahoney.

## CONCLUSION

For the all reasons outlined above and supported by the record, Mahoney requests the Court grant it summary judgment on all of Dale Evans' claims.

Respectfully Submitted:     December 12, 2016.

THE HASSETT LAW FIRM, P.L.C.

By:   _s/Myles P. Hassett_____
        Myles P. Hassett
        Jamie A. Glasser
        *Attorneys for Defendant/Cross-Defendant/*
        *Cross-Claimant M&O Agencies, Incorporated*
        *d/b/a The Mahoney Group*

1

**PROOF OF SERVICE**

2

3

STATE OF ARIZONA
COUNTY OF MARICOPA

4

5

     I, Armida Ruiz, am employed in Maricopa County, State of Arizona; I am over the age of 18 and not a party to the within action; my business address is 1221 E. Osborn Rd., Suite 200, Phoenix, Arizona 85014.

6

     On December 12, 2016, I served true copies of the following document(s) described as:

7

8

**DEFENDANT THE MAHONEY GROUP'S MOTION FOR SUMMARY JUDGMENT**

9

on the interested parties in this action by placing a true copy, enclosed in a sealed envelope, addressed as follows:

10

11

Christopher G. Kerr, Esq.
Marc S. Shapiro, Esq.
Hanger Steinberg Shapiro & Ash, ALC
21031 Ventura Boulevard, Suite 800
Woodland Hills, California 91364
e-mail: ck@hssalaw.com
e-mail: mss@hssalaw.com
*Attorneys for Plaintiff*
*Dale Evans Parkway 2012 LLC*

12

13

14

15

Steven T. Adams, Esq.
Musick, Peeler & Garrett, LLP
One Wilshire Boulevard, Suite 2000
Los Angeles, California 90017
e-mail: s.adams@mpglaw.com
*Attorneys for Defendant*
*National Fire and Marine Insurance Company*

16

17

18

19

Lawrence Borys, Esq.
Ms. Pascale Gagnon Esq.
Ropers, Majeski, Kohn & Bentley, P.C.
445 South Figueroa Street, Suite 3000
Los Angeles CA 90071
e-mail: Lawrence.borys@rmkb.com
e-mail: pascale.gagnon@rmkb.com
*Attorneys for Defendant*
*The Mahoney Group*

20

21

22

23

24

25

___   **BY MAIL:**
   ___ I placed such envelope for deposit in the U.S. Mail for service by the United States Postal Service, with postage thereon fully prepaid.

26

27

   ___ As follows:  I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it

28

- 21 -

would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Phoenix, Arizona in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

 X    (Federal) I declare under penalty of perjury that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

 X    **BY ELECTRONIC MAIL:**
        I transmitted a true copy of said document(s) via electronic mail, and no error was reported said e-mail was directed as indicated on the service list.

        Executed on December 12, 2016 at Phoenix, Arizona.


                              s/ *Armida Ruiz*
                              Armida Ruiz

30560/MSJ (Mahoney)

- 22 -